MATTHIAS HULICK, plaintiff in error, v. IRA SCOVIL, defendant in error.

*Error to Peoria.*

Testimony, if relevant, may be properly received, although in itself insufficient to show good ground of recovery or defence, and a party, by not objecting to its reception when offered, does not compromit any right afterwards to ask for its exclusion on account of such insufficiency.

Intrusion and trespass, under the statute, are distinguishable in this: the former implies an unlawful possession of lands, while the latter may amount to a mere entry upon land without retaining possession, but doing some damage.

An Auditor's deed is not a Patent; there is a manifest distinction between them. The latter conveys the title of the Government, and is under the hand of the chief executive officer and the great seal of State. The former simply passes the owner's title, and is executed by the Auditor, or other proper officer, under his own hand and seal.

An Auditor's deed, so far as delivery and acceptance are concerned, stands on the same footing as any other deed between individuals.

In an action of ejectment brought by A. against B. the latter read in evidence to the jury an Auditor's deed to C. of the premises in controversy, founded upon a sale for taxes, &c. due thereon, in order to establish an outstanding title. It further appeared in evidence that the attorney of B., a witness in the case, applied for and obtained the deed from the Auditor at the instance of his client; that neither he nor his client were authorized by C. to obtain it, and that the deed was never delivered to or accepted by C.; that the witness had heard there was such a person as C. but did not know him; and that when the deed was made by the Auditor, the witness took it, and that it still remained in his or his client's possession. He further stated that B. claimed under C. and this was the only evidence offered for the purpose of connecting himself with the title alleged to pass by the deed: *Held*, that there was no delivery and acceptance of the deed.

A deed can only take effect at and from its delivery, if at all, and delivery and acceptance must be mutual and concurrent acts. Proof of an acceptance subsequent to the delivery is not sufficient to give validity to the deed. The presumption that a party will accept a deed because he is to be benefitted thereby, is never carried so far as to consider him as having accepted it.

EJECTMENT, originally brought by the plaintiff in error against the defendant in error in the Fulton Circuit Court,

Hulick *v.* Scovil.

but subsequently removed into the Peoria Circuit Court, where it was heard before the Hon. John D. Caton, without the intervention of a jury, by the agreement of the parties. The Court found the issue for the defendant and rendered judgment accordingly.

The evidence is stated in the Opinion of the Court.

*E. N. Powell,* for the plaintiff in error.

1. Delivery is essential to the validity of a deed. Yet a delivery in some instances may be to a third person for the use and benefit of the grantee. *Church* v. *Gilman,* 15 Wend. 656; *Ferguson* v. *Miles,* 3 Gilm. 358. But when the delivery is made to a third person, it must appear that it was for the use of the grantee.

But a deed procured by a mere volunteer, without authority of the grantee, is void. *Ferguson* v. *Miles,* Ibid. 358.

In this case, it clearly appears from the testimony that there was no delivery to the grantee or acceptance by him, or to a third person for his use and benefit, and there can be no delivery without an acceptance. *Jackson* v. *Phipps,* 12 Johns. 418; *Herbert* v. *Herbert,* Bre. 282; *Church* v. *Gilman,* 15 Wend. 656; *Jackson* v. *Richards,* 6 Cowen, 617; *Bryan* v. *Wash,* 2 Gilm. 557.

2. But it will be contended on the other side that the Auditor's deed is a *Patent,* and therefore it needs no formal delivery, but, so soon as it is executed, that it at once becomes valid without delivery to or acceptance by the grantee; and the case of *Graves* v. *Bruen,* 1 Gilm. 167, will be cited in support of this position.

I can see nothing in that case to call for such a decision, and am, therefore, led to conclude that it was nothing but a *"judicial flourish."* The recording of a deed adds nothing to its validity; the recording of a deed is merely to give notice.

The case in 15 Wend. 656, was a deed emanating directly from the State of Connecticut, and the Supreme Court of New York placed the deed precisely upon the same grounds as a deed from an individual.

Again, the Supreme Court of the United States, in the case of *Boardman* v. *The Lessees of Read,* 6 Peters, 342, say:

"Titles acquired under sales for taxes depend upon differ-
ent principles, and these are the titles to which some of the
authorities cited in the argument refer. Where an individ-
ual claims land under a tax sale, he must show that the sub-
stantial requisites of the law have been observed; but this is
never necessary when the claim rests on a *Patent* from the
Commonwealth."

Now it seems to me, that if the Auditor's deed is to be as-
similated to a Patent, that then it inevitably follows that the
deed of the sheriff for lands sold for taxes, or upon an execu-
tion at law, would be a Patent. The Auditor is the officer ap-
pointed by the State to execute the deed; it is called a *deed*
in the Act authorising him to make it; the sheriff is also the
officer appointed by the same authority to execute a deed,
and his deed is as much a Patent as the deed of the Auditor.
It is true there may be a little more dignity in the office of
Auditor in consequence of his proximity to the fountain of
power, still his deed is under his own private seal, and not
like Patents, issuing direct from the State, under the great
seal.

3. I am also advised that the defendant's counsel will
rely upon the case of *Doe*, &c. v. *Knight*, 12 Eng. Com.
Law R. 351.

By a careful examination of that case, it will be found that
it does not run counter to the authorities above cited. In
that case the Court decided that the deed had been suffi-
ciently delivered, because the grantor had parted with the
custody of the deed, and had delivered it to a third person
for the use and benefit of the grantee.

Delivery of some kind is deemed necessary, by all the
authorities. Now compare the facts in the case above cited
with the case now before the Court. Here by the bill of
exceptions it appears that no delivery to the grantee, or to
any person for his use, was ever made. The fact of author-
ity in Elliott to procure the deed is expressly negatived, and
there can be no presumption of authority, or that the deed
was for the benefit of the grantee. If anything is to be pre-
sumed, it is that Wolcott had abandoned his purchase by

never taking out his deed, or that he had received his re-
demption money from the owner of the land.

W. *Elliott Jr.* for the defendant in error, filed the follow-
ing brief:

It is contended by plaintiff that the deed of the Auditor
was erroneously admitted in evidence in the Circuit Court,
because it was not delivered to the grantee in *propria per-
sona.* An Auditor's deed is a Patent for land from the State.
Patents or deeds from the United States, or a State, are suf-
ficiently delivered when signed by the proper officer and filed
in his office, and vest the title of the land in the patentee
without further delivery. *Graves* v. *Bruen,* 1 Gilm. 167;
*Rhinehart* v. *Schuyler,* 2 do. 473.

But admitting that Patents are to be subject to the same
rules as other deeds, this deed was delivered. Wolcott had
prior to its issuance, purchased the land conveyed of the
State for taxes; the Auditor, in accordance with his duty,
had executed a deed to the purchaser, and delivered the
same to an attorney of this Court for the benefit of the gran-
tee, whose acceptance of the same in behalf of the grantee
was sufficient to vest the title to the land in the grantee. A
delivery may be made to a stranger for and in behalf of the
grantee and to his use, although he may be entirely ignorant
of the conveyance. *Bryan* v. *Wash,* 2 Gilm. 557; *Hatch*
v. *Hatch,* 9 Mass. 307.

O. H. *Browning & N. Bushnell,* for the defendant in
error, argued:

I. The statement of the defendant that he claimed title
to the premises in controversy, under the grantee in the tax
deed were properly received in evidence. The declaration
of a person in possesion of land which qualify or give char-
acter to such possession, are always admissible in evidence
as a part of the *res gestæ.* 1 Greenl. Ev. § 109.

II. The plaintiff in ejectment must recover on the
strength of his own title. It is sufficient for the defendant
to show title out of the plaintiff, whether in himself or in a

Hulick *v.* Scovil.

third person. Adams' Eject. 275; *Bloom* v. *Burdick*, 1 Hills' (N. Y.) R. 130. The only exception is, where it appears affirmatively that the defendant is a mere trespasser or intruder without color or claim of title; in that case he cannot set up an outstanding title in a third person. *Jackson* v. *Harder*, 4 Johns..202; *Same* v *Rowland*, 6 Wend. 671; *Same* v. *Moore*, 16 Johns. 197; *Same* v. *Schamber*, 7 Cowen, 187, 643; *Same* v. *Stambury*, 9 Wend. 201. In the present case, the defendant is in possession, claiming title. There is no evidence to show that this claim is fraudulent or colorable; nothing to explain the origin or to qualify the character of this possession. The possession alone, unexplained, is *prima facie* evidence of title, sufficient to protect the defendant against the whole world except the rightful owner.

III. There was a sufficient delivery and acceptance of the tax deed. A deed may be delivered by words or acts, or by words alone. It may be delivered to the grantee, or to his agent, or to a stranger to his use. If delivered to a stranger, whether or not the grantee is informed of the execution of the deed and formally accepts it, is immaterial. If thus delivered by the grantor to a stranger for the purpose of conveying title and for the use of the grantee, this is a valid delivery; and if the grant is beneficial to the grantee, his acceptance will be presumed. The exercise of volition on his part is not required; this acceptance is a conclusion of law, antecedent to all information on the subject; an inference founded upon the reasonable presumption that every man will accept of an act done for his benefit. Whether the deed has been delivered, depends upon the fact whether the grantor has placed it beyond his own control, whether any act remains to be done by him. If it is denied that the deed has been accepted, it is for the party making the denial to disprove the presumption arising from the beneficial nature of the grant. This must be done by evidence, not merely negative, showing that the grantee is ignorant of the deed, but affirmative and positive, bringing home to the party a knowledge of the deed, and a disaffirmance of it.

Till such disaffirmance is shown, the presumption of accept-
ance must continue. For as this acceptance is implied by
law for the benefit of the grantee, through his inability to
accept in fact from his ignorance of the grant, the mere
continuance of this ignorance and consequent inability can-
not rebut the original presumption. Such is the plain con-
clusion to be drawn from a careful analysis of the numerous
authorities on the subject. *Verplank* v. *Sterry*, 12 Johns.
576; *Souverbye* v. *Arden*, 1 Johns. Ch. R. 240; *Cook's
adm'r.* v. *Hendricks*, 4 Munroe, 502; *Inlow* v. *Common-
wealth*, 6 do. 74; *Bryan* v. *Wash*, 2 Gilm. 557; *Shelton's*
Case, Cro. Eliz. 7; 4 Cruise's Dig. 28; Shep. Touch. 57–8;
4 Com. Dig. title *Fait*, A 3, 273; *Taw* v. *Bury*, 2 Dyer, 167
b; *Church* v. *Gilman*, 15 Wend. 656; *Jackson* v. *Richards*,
6 Cowen, 617; *Wankford* v. *Wankford*, 1 Salk. 299, 301;
*Ferguson* v. *Miles*, 3 Gilm. 358; Cro. Eliz. 54; *Wheel-
wright* v. *Wheelwright*, 2 Mass. 447; *Doe* v. *Knight*, 12
Eng. Com. Law R. 351; *Maynard* v. *Maynard*, 10 Mass.
456; *Harrison* v. *Phillips' Acad.*, 12 do. 456; *Scrugham* v.
*Wook*, 15 Wend. 545; *Herbert* v. *Herbert*, Bre. 278; *Clark*
v. *Ray*, 1 Har. & Johns. 318; *Fay* v. *Richardson*, 7 Pick.
91; *Hutch* v. *Hutch*, 9 Mass. 307; *Hedge* v. *Drew*, 12 Pick.
141.

O. Peters, also for the defendant in error, contended
there was no necessity for any delivery of the deed of the
Auditor of State to E. Wolcott, in order to show title out of
the plaintiff.

This Court has solemnly decided that a deed from the
Auditor, predicated upon a sale of land for taxes, is a Patent,
and has the same force and effect as any other Patent from
the Government of the State or United States, by its proper
officers. On this point he cited *Graves* v. *Bruen*, 1 Gilm.
167; *Rhinehart* v. *Schuyler*, 2 do. 473. He further con-
tended, that a Patent took effect from the time of its execu-
tion. When the proper officer has duly executed the Patent,
his functions and power over the subject matter of it, ceases,
and the right of him for whose benefit it is made, begins.

Hulick *v.* Scovil.

The Auditor has his duty to perform, viz: to make the Patent; here his duty ends, and his power ceases, and the rights of the patentee become vested and fixed. In grants of land to purchasers from the United States, Patents often remain for years in the public land office. Would any one seriously contend, that the Patent is inoperative so long as it remains in the office? that the patentee in such case, has acquired no title described in the patent? and according to the decisions of this Court, is not the Auditor's deed, which has been termed (perhaps not inappropriately,) a "tax patent," to have all the force and effect, and accompanied by all the incidents of any other Patent, emanating from the Government? This must be so, or this Court must recede from the ground it has heretofore occupied, and overturn the rules it has established, and the decisions it has pronounced. The effect to be given to a Patent, and when it is to take effect, is well stated, and forcibly illustrated in the case of *Marbury* v. *Madison*, 1 Cranch. 137.

In the case at bar, the owner of the land was in default in his duty to the Government, by not paying the taxes assessed upon it; by operation of law, the land is condemned for this non-payment of its dues to the Government. The Auditor, in pursuance of law, offers it for sale, and it is sold at public auction in conformity to law. The time for the redemption expires, and the Auditor executes a deed to the purchaser, Wolcott. This is all the Auditor had to do. The Government lost all control over the subject *instanter*, upon the performance of this official act, the execution of the Patent by the Auditor. Had the deed, by any casualty, been immediately destroyed, it would not have divested Wolcott of his title to the land. The conclusion, then, will follow, that the defendant having shown that the deed, (the Patent,) to Wolcott had been made by the Auditor, the title is shown to be out of the plaintiff, and the inquiry whether it was delivered or not, is rendered unimportant and immaterial.

It also follows, that the proof of the declarations of defendant as proved by Mr. Elliott, is immaterial, inasmuch as the Patent shows that the title is out of the plaintiff, and

is rendered effectual, and fully sustains the defence, irrespective of any declarations of defendant.

*A. Williams*, for the plaintiff in error, in conclusion.

A mere intruder cannot set up an outstanding title in a third person. *Perryman's Lessees v. Callison*, 1 Term. R. 515; *Jackson v. Harder*, 4 Johns. 202–211; *Williams v. Claytor*, 1 Scam. 503, 505-6; *Sands v. Codwise*, 4 Johns. 597.

A tax deed is not a Patent. They depend upon entirely different principles. *Boardman v. The Lessee of Read*, 6 Peters, 342; *Doty v. Peasley*, 2 Bibb, 15; *Shortridge v. Catlett*, 1 A. K. Marsh. 587.

A delivery and acceptance of a deed is absolutely essential to its operation. *Herbert v. Herbert*, Bre. 282; *Ferguson v. Miles*, 3 Gilm. 363; *Bryan v. Wash*, 2 do. 557.

In all the reported cases at the time of the decision upon the operation of the deed, the grantee was claiming under it.

In this case the grantee knows nothing of the existence of the deed. It was, as the evidence shows, surreptitiously procured by the defendant for the purpose of defeating this action, and has remained in his hands ever since. The plaintiff proved title in himself to the land. The defendant seeks to defeat that title, not by showing paramount title in himself, but by proving that he—without any authority so to do—procured the Auditor, in 1842, to make out and deliver to him a tax deed for the land reciting, that it was sold in 1832 to E. Wolcott, without any proof that the land had ever been sold for taxes. This Court has decided that such deed, when offered in evidence by the owner thereof, without any evidence showing the circumstances under which it was executed, was evidence that it was rightly made; but they can scarcely be prepared, when it is shown to have been surreptitiously obtained, to decide that it is, without any other proof that the land had been sold, &c. It cannot be allowed to a defendant in this way to create a title in a third person without his knowledge and consent, and then to use it to prevent the owner of the land from recovering it.

Hulick *v.* Scovil.

The Opinion of the Court was delivered by

Thomas, J.* The plaintiff in error brought his action of *ejectment* in the Circuit Court of Fulton county, to evict defendant from the possession of a certain tract of land lying in that county. The case went by change of venue into the Peoria Circuit Court, where it was, by the agreement of parties, tried by the Court without the intervention of a jury.

The plaintiff, claiming under the General Government, exhibited a chain of title, commencing with the patentee and terminating in himself, every link of which was perfect. The defendant relied upon showing title out of plaintiff, under and by virtue of a sale for taxes in pursuance of law. For that purpose he read in evidence to the Court a deed of the Auditor of Public Accounts of the State of Illinois, reciting an exposure of the tract of land in question to public sale on the 14th day of January, A. D. 1832, in conformity to law, for the sum of $2·62, the amount of tax for the year 1831, with interest and costs chargeable to said tract of land; the purchase of said land by one E. Wolcott for the said sum of $2·62, and the payment of the purchase money by the said Wolcott, and conveying said land to him in fee simple.

The plaintiff thereupon called William Elliot Jr. the defendant's attorney, and proved by him that he went to the Auditor's office, at the instance of the said defendant, and procured the Auditor to execute the said deed; that the said Wolcott, the grantee in said deed, never authorized him or his client to get said deed executed, and that said deed never was delivered to nor accepted by said E. Wolcott; that witness had heard there was such a person as E. Wolcott, but did not know him, and that when said deed was made by the Auditor, witness took it and it has ever since been in his or his client's possession. The said witness stated that the defendant claimed under the said grantee, which was the only evidence offered by the defendant connecting himself with the title alleged to pass by said deed to the said grantee. This state-

---

* Wilson, C. J. and Denning J. did not sit in this case.

ment of the witness, he was permitted to make, the plaintiff's objection to the contrary notwithstanding.

Upon this state of facts the plaintiff moved the Court to exclude the said deed from the consideration of the Court, upon the ground that it never had been delivered to nor accepted by the grantee named in it. The Court overruled the motion, found the issue for the defendant, and rendered judgment accordingly.

These several opinions of the Court admitting the evidence objected to by plaintiff, in refusing to exclude the deed, and in rendering judgment, were excepted to by the plaintiff, and are now assigned for error.

The only matter in controversy here, as it was in the Court below, is as to the validity of the title on which the defence is based. The result of that controversy depends mainly on the question of delivery of the deed to, and acceptance by the grantee. Before considering it, however, it becomes necessary to dispose of several questions of minor importance, but in their nature preliminary, involving on the one hand the plaintiff's right to raise the question of the delivery and acceptance of the deed, under the assignment of errors; and on the other, the defendant's right to set up an outstanding title in a stranger, in bar of plaintiff's recovery.

The defendant's attorney insists, *arguendo,* that the plaintiff having permitted the deed to go in evidence to the Court without objection, should not now be allowed to deny that it was operative to vest title in the grantee; but this view of the subject is incorrect. The question is not as to the legal admissibility of the deed in evidence, irrespective of any extraneous matter, but of its sufficiency taken in connection with the circumstances accompanying its delivery, to subserve the purposes for which it was offered. Testimony, if relevant, may be properly received, although in itself insufficient to show good ground of recovery or defence as the case may be, where its deficiency may be supplied by other proof. As for instance, a sheriff's deed, which, to show title, must be accompanied by evidence of a judgment and execution; or the ordinary case of one of a series of deeds, relied

upon to show title.  In such case it is not necessary to ex-
hibit the entire chain of evidence at a single view, but from
the very nature of the case it must be extended progressive-
ly.  The question is not as to the sufficiency of the link of-
fered and its associate links to complete the chain, or endue
it with the necessary strength for its intended purposes, but
simply as to its adaptation to the composition of the proposed
chain.  Nor will the Court undertake so to control a party
endeavoring to make out his chain of title, as to require that
each link be the regular sequence of that next preceeding it
in the order of the evidence.  When, however, the whole
evidence on the subject has been heard, if the Court consider
it insufficient, they may, on the application of the party against
whom it was offered, either exclude it, or instruct the jury
that it is insufficient to maintain the action or defence as the
case may be.

Tested by this rule, the deed was admissible in evidence
and could not properly have been rejected if it had been ob-
jected to.  It was pertinent to the matter in issue, and if not
sufficient in itself to make out the defence based upon it, might
have been followed by other evidence making it so.  The
plaintiff, therefore, in permitting it to be read in evidence
without objection, did not compromit any right afterwards
to ask for its exclusion, on account of its impotency to show
title out of the plaintiff, whether it appeared intrinsically or
from matter *aliunde*.

And now as to the defendant's right to defend his posses-
sion in the manner attempted by him, which is denied by the
plaintiff's counsel   Is he, as is contended, a mere intruder
upon the land, connecting himself in no way with the alleged
outstanding title of Wolcott?   And if so, can he properly in-
terpose that title as a bar to plaintiff's recovery?

Of the insufficiency of the defendant's evidence to connect
him with Wolcott's title, I have no doubt; and in coming to
this conclusion I by no means controvert the rule of evidence
relied upon by his counsel, but simply deny its applicabil-
ity to the question under consideration.  That rule, as laid
down by Greenleaf, is, that "declarations of a person in pos-

session of land in *disparagement of the title of the declarant* are admissible as original evidence. Possession is *prima facie* evidence of a fee simple, and the declaration of the possessor, that he is tenant to another, it is said, makes most strongly against his own interest, and therefore is admissible." And he adds: "But no reason is perceived why every declaration accompanying the act of possession, whether in disparagement of declarant's title, or otherwise qualifying his possession, if made in good faith, should not be received as part of the *res gestæ*, leaving its effect to be governed by other rules of evidence." 1 Greenl. Ev. § 109.

The proof in the case at bar was not of any declaration of the defendant, but consisted simply of a statement of the witness that defendant claimed under the grantee in the deed. But if the statement of the witness be considered as showing the defendant's declaration, it is still obnoxious to the fatal objection, that such declaration in no way "qualifies his possession" or "disparages his title," as it does not show how he claims, whether as purchaser or tenant. And again the circumstances negative the idea of "good faith" on the part of the defendant in making any such claim, and show a desire rather to fortify his possession than to weaken his title.

It results that defendant is in possession without color or claim of title, but whether as an intruder or trespasser, (about which there was some controversy between the counsel,) is perhaps immaterial, and indeed the characters would seem to be the same. Intrusion is, at the Common Law, one of the modes of *ouster* of the freehold, and is defined to be "an entry by a stranger after a particular estate of freehold is determined before him in reversion or remainder, as when a tenant for life dieth seized of certain lands and tenements, and a stranger cometh thereon, after such death of the tenant, and before any entry of him in reversion or remainder." 3 Ch. Bl. 169. Trespass is an entry on another's ground without lawful authority, and doing some damage however inconsiderable to his real property. Ib. 209. This broad distinction does not exist under our statute dispensing with livery of seizin, but the only distinction apparent to my

mind between an intrusion and a trespass is, that the former implies an unlawful possession of lands, while the latter may amount to a mere entry upon land without retaining possession, but doing some damage.

But the error in the Court in admitting this evidence, would not necessarily operate to render the judgment of the Circuit Court reversible, unless it should appear, that in the absence of any evidence connecting the defendant with the alleged outstanding title in Wolcott, he could not lawfully use it as a shield to protect his possession from invasion by the plaintiff. Would such result follow? The plaintiffs' attorney, as has been shown, insists it would, and in support of that position cites several authorities. That, however, principally relied upon, is the case of *Jackson* v. *Harder*, 4 Johns. 211.

On examination of that case, it will be found not to warrant the conclusion educed from it, to wit: that in no case can a person in possession of land, protect such possession by proof of outstanding title in a stranger, without connecting himself with such title. The facts of the case show that one Baker had entered and held under the plaintiff, and that the defendant succeeded to the said Baker's possession, but in what way does not appear. The Court say, "it is not stated or alleged, that he entered under any pretence or color of title, and the natural and just inference seems to be, that he entered upon the possession, which Baker had left, as an intruder without title. In that case, the possession of the plaintiff was sufficient to entitle him to recover, and the entry of the defendant must be considered as a trespass, according to the decision in the case of *Jackson* v. *Hazen*, 2 Johns. 22. The defendant is either such an intruder; or he entered under Baker, and in either case he is precluded from questioning the plaintiff's right of possession." "But the defendant set up and offered to show an outstanding title subsisting in some third person, &c. The first question which presents itself here, is, whether a mere intruder can be permitted to protect his intrusion under an outstanding title in a stranger. I think not. The rule has never been carried that far, and

it would be a violation of just principle to apply it to the case of a trespasser, who enters upon another's possession, without pretence of title." That case, then, "hath this extent no more;" that where a person dispossesssed of land by the intrusion of another, without any pretence of title, seeks to recover his possession by the eviction of the intruder, the latter may not protect his unlawful possession by showing outstanding title in a third person.

But the doctrine is otherwise, where, as in the case at bar, a person is found in the peacable possession of land, and another, not showing himself ever to have been in the prior possession of such land, seeks to evict him by ejectment. In such case, it would be in palpable violation of the well settled doctrine that a plaintiff in ejectment can only recover upon the strength of his own title, and not upon the weakness of his adversary's, to refuse the defendant the privilege of destroying the plaintiff's claim to recovery, by showing title out of him. But the doctrine, "*melior est conditio possidentis*" prevails, and neither law nor reason, requires the possessor to show that he is entitled to retain his possession, before he is at liberty to show that the plaintiff has no right to take it from him. The law imposes no such condition precedent upon his right thus to assail his adversary's title. Tillinghast's Adams, 319, *et in notis*; *Bloom* v. *Burdick*, 1 Hill's (N. Y.) R. 143; 6 Verm. 395; *Colman* v. *Talbot*, 2 Bibb, 129; *Jackson* v. *Harrington*, 9 Cowen, 86; *Colston* v. *McVay*, 1 A. K. Marsh. 250; *Thomas* v. *Head*, ib. 450; *Voorhies* v. *Bridgford*, 3 do. 26; *Foster* v. *Joice*, 3 Wash. C. C. R. 498. In *Jackson* v. *Rowland*, 6 Wend, 666, it is even said that where the title of the landlord has expired, the tenant may show an outstanding title against him; and by Spencer J., in *Jackson* v. *Morse*, 16 Johns. 197, that in ejectment against a person who has forcibly entered upon and taken possession of land, it seems that the defendant is not precluded from setting up a title in himself or a third person in bar of the action.

But although we hold, that it was unnecessary for the defendant in order to entitle him to show title out of the

plaintiff, and in a stranger, to connect himself with such outstanding title, it nevertheless yet remains to be seen whether his omission in this case to connect himself with the title, alleged to pass by the Auditor's deed to Wolcott, does not render said deed inoperative for that purpose. That question, however, properly belongs to the investigation of another branch of the subject, to which I now proceed.

The plaintiff, insisting that delivery of the deed in question to, and its acceptance by the grantee named therein, or some one properly authorized to receive it for him, was essential to its validity, denies that there ever was any such delivery, or acceptance.

The defendant meets this objection by assuming, *first,* that the deed having been made by the Auditor, is to be considered as a Patent from the State, and that, therefore, no delivery of it was necessarry, to vest title in the grantee; but that it was operative for that purpose, when it was issued. And *secondly,* if the document should be held to be, not a Patent, but a deed, that its delivery to the witness Elliott, was a sufficient delivery to the grantee, and that his acceptance of it, as it is beneficial to him, is to be presumed.

The authority relied upon by defendant's counsel, in support of the first of these positions is found in *Graves* v. *Bruen,* 1 Gilm. 172, and *Rhinehart* v. *Schuyler,* 2 do. 523. The former case holds that the registry laws do not apply to Patents issued by the State or United States, and therefore by analogy, not to those in consummation of tax sales, made by authority of the State; the latter holds the same doctrine, as applicable to proof of the execution of Auditors' deeds, under tax sales. Neither case settles that delivery of a tax deed is not, as in the case of any other deed, essential to its validity.

The cases cited by plaintiff's counsel to disrobe this "tax patent," as he facetiously styles it, of its assumed dignity, are *Doty* v. *Beasly,* 2 Bibb, 15, and *Shortridge* v. *Catlett,* 1 A. K. Marsh. 587, holding a register's deed under a tax

sale void, for want of a seal, and *Boardman* v. *The Lessees of Reed;* 6 Peters, 342, deciding that titles acquired under sales for taxes, depend upon different principles from those governing when the claim rests on a Patent from the Government. Another authority, in itself decisive of this question, is found in *Church* v. *Gilman,* 15 Wend. 658, where the only question was, as to the delivery of a deed, executed by the treasurer of the State of Connecticut, upon a sale of the land by the State. Chief Justice Savage commences his opinion by saying, " the pleadings all concede, what could not be denied, that delivery is essential to the validity of a deed."

The deed in that case had certainly higher claims to rank as a Patent, than a tax deed has, and yet no such claim was made for it. A Patent conveys the title of the Government, and is under the hand of the chief executive officer, and the great seal of State; while a tax deed simply passes the owner's title, and is executed by the Auditor, or other proper officer, under his own hand and seal. This distinction is every where preserved in our legislation on these subjects. See R. L. of 1827, 326, § 4, as to tax deeds; Rev. Stat. 501, ch: xcviii. as to Patents for school lands, and Rev. Stat. 590, Act No. xxviii, as to both Patents and tax deeds.

The provisions of this last mentioned Act alone fully illustrate the distinction betwen these different muniments of title. Sec. 1 provides for the assessment of canal lots, and lands which had been sold upon a credit, for purposes of taxation, and the lien for said tax is thereby expressly limited "to the actual interest which has been paid for by the purchaser or purchasers, together with the improvements thereon," and is not to "extend to the interest of the State in said lot or lands." Sec. 2 directs the sale of said lots and lands for taxes in arrears, with the same limitations, "the fee simple of said property still remaining in the State." Sec. 3 declares the operation of deeds *eo*°*nomine,* made by virtue of any such sale, &c. And Sec. 5, authorizing the purchaser at tax sale to continue the payments in

arrear to the State, from the original purchaser, entitles him upon completing such payment, if the lands still remain unredeemed from the tax sale, to a Patent for such lands or lots, &c.

Having determined that an Auditor's deed is not a Patent, and that so far as delivery and acceptance are concerned, it stands on the same footing as any other deed between individuals, I come now to consider of the alleged defect in the execution of the deed under consideration in the case at bar, in that respect.

The solution of this question depends not upon the settlement of any conflict of authorities. There is no such conflict, but the authorities relied upon are, with a few exceptions, the same on both sides. Our only task, therefore, is, examining all the authorities on the subject within our reach, to eliminate from them the true doctrine as applicable to this case, and to dispose of it accordingly.

This investigation reaching back to a remote period in the history of English jurisprudence, and traversing the entire field of subsequent English and American adjudications on the subject, to their termination in very recent cases, exhibits as its result, doctrine remarkable for its uniformity and consistency throughout. It shows principles, which long since expounded, and recognized and sanctioned by the Courts ever since, pervade to a greater or less extent, every case upon the subject, only modified by, and controling results according to the peculiar circumstances of each case.

These principles are:

I. In every deed there must necessarily be a grantor, a grantee, and a thing granted; (4 Cruise, 12;) that delivery by the grantor and acceptance by the grantee, are essential to the validity of a deed; that a deed takes effect only from its delivery, and there can be no delivery without acceptance, either express or implied, delivery and acceptance being necessarily simultaneous and correlative acts. *Richards* v. *Jackson,* 6 Cowen, 617; *Church* v. *Gilman,* 16 Wend. 658. Other authorities cited *post.*

II. Delivery may be made, *first,* to the party himself, or

any other by his appointment; or to any one authorized to receive it; or *second,* to a stranger for and 'in behalf, and to the use of him to whom it is made, without authority, under certain circumstances.    2 Roll. 24 *l,* 42;  Touchstone 57. See *post.*

III.   In case of delivery to  a  stranger, without authority from the grantee to accept, the acceptance of the grantee at the time of delivery will be presumed, under the following concurring circumstances, viz: 1. That the deed be upon its face beneficial to the grantee; 2. That the grantor part entirely with all control over the deed; 3. That the grantor (except in case of an escrow,) accompany delivery by a declaration, intention or intimation, that the deed is delivered for and in behalf, and to the use of the grantee; 4. That the grantee has eventually accepted the deed and claimed under it.    4 Cruise, 34;  Touchstone, 57; and other authorities, *post.*

Testing the case at bar by these principles, and the Auditor's deed was inoperative to vest title in the grantee.   As the defendant wholly failed to connect himself by proof with the title claimed for Wolcott, it follows, (and here I resume the consideration of the consequences of such failure on his part, postponed at a  former point in this Opinion,) that delivery to or acceptance by him or his attorney, was a delivery to a stranger unauthorized to accept, and as such the delivery was not accompanied or followed by all of the concomitant circumstances necessary to its validity.   It is true that the deed is apparently beneficial in its operation to the grantee; and that the grantor parted with all control over it, but he did not in delivering it declare or intimate that he did so "for and in behalf, and to the use of the grantee, named in it," nor was his intention to do so necessarily inferable from the circumstances attending the delivery.   Such intention would have been sufficiently shown by evidence of a presentation to the Auditor by the witness Elliott, of the treasurer's receipt to Wolcott, when applying for the deed, as required by law in such cases.   R. L. 1827, p. 326, §4. But this does not appear from the evidence to have been

made. The presumption is rather that when the deed was called for, the Auditor finding on inspection of his books that the land had been sold to Wolcott, and remained unredeemed, made the deed without inquiring for whose use it was intended; that it was in fact procured by the witness at the request of his client, the defendant, he positively states; that it was intended for the defendant's use and benefit as a means of preventing his dispossession of the premises by the plaintiff, is manifest from the fact that it has been kept in the possession either of the said witness or defendant; and that the grantee (Wolcott) never has accepted it, nor so far as the record shows, been notified of its existence.

But admit that the intention of the grantor to deliver the deed "for and in behalf and to the use of the grantee" is to be presumed, it must nevertheless still be held inoperative for want of acceptance by the grantee, either express or implied. While he never has actually accepted it, nothing on his part appears to have been done tantamount to an acceptance by implication. He has neither assented to it nor claimed under it, and so far as the record shows, knows nothing of its existence. Neither he nor any one claiming under him, now seeks its affirmance, but a stranger procuring its delivery to himself, now asks the Court to usurp the prerogative of of the grantee, by a recognition of an act wholly unauthorized by him, as his act. And this, too, not for the grantee's but for his own benefit; not to establish title in the grantee, that he may be let into possession of the land, but to show title out of the plaintiff, that he may be kept out of the possession.

This feature of the case at bar distinguishes it from all the cases in which the grantee's acceptance of a deed delivered to an unauthorized person, has been presumed; and is fatal to the defendant's claim to such presumption in favor of the deed relied upon by him. The ground on which he bases that presumption, viz: that the deed upon its face is apparently beneficial to the grantee, does not warrant it. From the fact that the grantee will probably be benefited by accepting the deed, it may reasonably be presumed that he will do so when it shall be offered to him, or he become

apprised of its existence; but until then, it certainly cannot be presumed that he has done so. No case has ever gone so far as that. But in every case in which the grantee's acceptance of a deed delivered to a stranger without authority to receive it has been presumed, the following concurrent facts have appeared with the apparently beneficial operation of the deed towards the grantee, viz: 1. That the grantee has actually accepted the deed, or sought to become its beneficiary before the occurrence of the litigation involving the question of his acceptance; 2. That the grantee or some one claiming under his title has been a party to such litigation, for the purpose of establishing such title. And moreover the deeds held good in many of the cases, were voluntary deeds by parents settling property upon their minor children, and the benignity of construction given to them has originated to no inconsiderable extent, in the favor with which transactions of that character, when not in fraud of creditors, are always viewed.

To sustain the position here assumed, I will now proceed briefly and succinctly to examine all of the principal cases involving the question under consideration, as well those affirming, as others denying the validity of titles sought to be established under the circumstances supposed. The authorities cited by defendant's counsel first claim our attention.

*Bryan* v. *Wash*, 2 Gilm. 557. The grantor made a deed of lands to his granddaughter, sole and a minor. The deed was placed in the father's hands for the granddaughter's use, and after her marriage, her husband obtained possession of the said deed, which had been recorded. The bill was filed in the name of the grantor by the father, as his agent, against the grantee and her husband and their mortgagees, praying a restoration of the deed to the father, and that the record of it be annulled, &c. The defence rested upon the grantees' title. *Held*, that the delivery was to the father as the natural guardian of the grantee, and was operative to vest the estate in her presently. The Court base their opinion in part upon the principle heretofore adverted to; that "the law presumes much more in favor of the delivery of

deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale."

*Souverbye* v. *Arden*, 1 Johns. Ch. R. 240, like the case last cited, grew out of a voluntary settlement, for the benefit of a minor daughter. The deed was executed to trustees in trust for the daughter, and handed to her by her father, the grantor, at the time of its execution. It afterwards came again into his possession, and was delivered by him into the hands of one of the trustees for the daughter's benefit. The bill was filed after the marriage of the daughter, by herself and husband, against the grantor and the trustees, to compel a conveyance to the complainants. *Held,* that the deed "was duly executed in December, 1805, the time that it was handed to the *cestui que use,* so as to pass the estate, and that it was not, and could not be defeated by any subsequent acts or declarations of the grantor.

*Verplank* v. *Sterry,* 12 Johns. 546, grew out of the same transaction with the case of *Souverbye* v. *Arden* last cited, and is in all respects like it, the *cestui que use* in the two cases being sisters.

*Church* v. *Gilman,* 15 Wend. 656. On the 3d of October, 1834, the defendant having purchased a tract of land from the State of Connecticut, and fully paid for it, employed L. Ward Jr., of Rochester, to prepare a deed therefor, and transmit it to the Treasurer of said State for execution. The Treasurer, on the 10th of April, 1835, signed, sealed and acknowledged the deed, and delivered it to one S. P. Beers, of Hartford, for transmission to Ward for the use of the defendant, the grantee named in the said deed. On the 15th of the said month of April, Beers transmitted it to Ward for personal delivery to the defendant, and on the 20th of May, 1835, the deed was delivered to, and accepted by the defendant. On the 22d of May, (two days after its reception by the defendant,) he conveyed the land described in it to plaintiff, and this action was brought for breach of the covenant of seisin contained in his deed to plaintiff. The Court asserting the principle that "where the delivery is absolute, the assent of the grantee is presumed, from the fact that the con-

veyance is beneficial to him," say, nevertheless, that, "in this case it is not necessary to presume assent, for it is alleged that the deed was drawn by defendant's agent, and executed at his solicitation."

*Doe.* ex dem. *Garnons* v. *Knight,* 12 Eng. Com. Law R. 351, was the case apparently most confidently relied upon by the defendant's counsel; and it must be confessed that although there is nothing in the facts of the case to distinguish it in principle from other cases involving the same questions, yet from the very broad terms in which the law is laid down by the Court, it would seem at first blush to carry the doctrine of the presumption of acceptance by the grantee, further than it has in any other case been carried. A close examination of the case, however, will show that this is not so. One Wynne being largely indebted to the plaintiff's lessor, signed and sealed a mortgage to him, and at the same time placing it upon the table and putting his finger upon the seal, said, "I deliver this as my act and deed," all of which was done in the presence of his niece. She signed it as a witness and he took it away. He afterwards handed a paper to his sister supposed to be the same, saying, "here, Bess, take this and keep it, it belongs to Mr. Garnons." . He afterwards resumed its possession and again returned it to his sister, saying, "here, put this by." After the mortgagor's death the deed was delivered to and accepted by the mortgagee, who brought this action to recover possession of the mortgaged premises. The Court affirming his title, say: "Can there be any question but that delivery to a third person for the use of the party in whose favor a deed is made, where the grantor parts with all control over the deed, makes the deed effectual from the instant of such delivery?" And then, by way of response, quote the language of Lord Ellenborough, in *Stirling* v. *Vaughan,* 11 East, 623, that "the law will presume, if nothing appear to the contrary, that a man will accept what is his for his benefit." But the proof does not sustain the position. Their presumption in the supposed case is that there has been an acceptance; Lord Ellenborough's that there will be.

But, moreover, the case in East bore no analogy to that in which it was cited. It involved no question of the delivery of a deed, but was brought upon a policy of insurance, effected for "the benefit of all interested in the capture." The Crown was interested in the capture, but the prize master effecting the insurance had no special authority from the Government to represent its interest in that behalf, and the question being raised as to the effect of the contract, his Lordship uses the language above quoted, adding, "and hence it is for the benefit of the Crown to preserve the prize."

Again, the Court say: "And 2 Roll Abr. ( K ) 24, pl. 7; *Taw* v. *Bury*, Dyer, 161 *b;* 1 Anders. 4, and *Alford* v. *Lea*, 2 Leon. Cro. Eliz. 54, and 3 Coke, 27, are clear authorities that on a delivery to a stranger, for the use and on the behalf of the grantee, the deed will operate *instanter*, and its operation will not be postponed till it is delivered over to or accepted by the grantee." If they mean by this language to assert the doctrine, that a deed operates from the time of its delivery to a stranger having no authority to receive it, to vest title in the grantee, although he never has accepted nor claimed under such deed, their decision is *obiter dictum*, as the mortgagee in the case under consideration by them had accepted the deed, and was in that case seeking its enforcement. And moreover, such doctrine is not sustained even by their own authorities, as I will presently show. Although if they intend simply to decide what the case requires, that when Garnons did accept the deed, his acceptance when made, by implication related back to the delivery of it to the mortgagor's sister for his use, then their position is amply sustained by authority. The passage relied upon in Roll. Abr. is this: "If a man make an obligation to I, and deliver it to B, if I get the obligation, he shall have action upon it, for it shall be intended that B. took the deed for him as his servant."

In *Taw* v. *Bury*, an executor sued upon a bond. The defendant pleaded that he caused the bond to be written, sealed and delivered to C. to deliver to the testator as defendant's deed; that C. offered to deliver it to the testator,

as defendant's deed, and the testator refused to receive it; whereupon C. left it with the testator as a schedule and not as defendant's deed, and so *non est factum.*" Held, on demurrer, that first by the delivery of it to C. the deed was good, and was in law the defendant's deed before any delivery over to the testator, and the testator's refusal could not undo it as defendant's deed from the beginning." The case involved no question of testator's acceptance, or if it did, then the attempt of his personal representative to establish its validity, the testator having been in the actual possession of it, must have been held a virtual acceptance. Had the defendant sued upon the deed, the testator's refusal to accept would have enabled him to defeat a recovery, as numerous authorities show. The only inquiry was, was it the obligor's deed, not whether the obligor had accepted it.

The case of *Alford* v. *Lea*, decided upon the strength of Taw's case contains nothing worthy of stating here.

In the great case of *Butler* v. *Baker*, 3 Co. 26 *b*, the only case cited in *Garnons* v. *Knight* remaining for examination, Lord Coke says: "If A. make an obligation to B. and deliver it to C. to the use of B., this is the deed of A. presently; but if C. offer it to B. then B. may refuse it *in pais*, and thereby the obligation will lose its force." This case directly controverts the position which it is cited to sustain, as it shows that the deed although operative as the grantor's deed presently, is not to be considered as the grantee's until his acceptance. The same principal is stated by Paston J., Year Book, 3 H. 627, A. and cited 13 Viner, 23, (K) pl. 12, A. The Court in citing this case in Coke say very properly that the result might have been otherwise, if the question had been as in Taw's case, on the obligor's plea of *non est factum*, simply whether it was his deed. *Ferguson* v. *Miles*, 3 Gilm. 363, and *Maynard* v. *Maynard*, 10 Mass. 456, also cited by defendant's counsel, will be noticed hereafter.

*Cooke's* admr's v. *Hendricks*, 4 Munroe, 500, seems to rest upon principles entirely different from those controling the case at bar. There the obligor, in a bond for the conveyance of land, seeking a specific performance of the contract by

compelling the obligee to accept a deed for the land, rather than to enforce a judgment by default, obtained by him against the obligor for breach of the said covenant to convey, tendered the obligee a deed, which was refused. The obligor thereupon filed his bill praying a perpetual injunction of the judgment, and a decree compelling acceptance of the deed, and accompanied his bill by a deed to be delivered under the decree of the Court. It occurs to me that the true question in that case was, whether in Equity the complainant could be considered as having performed his covenant, or its equivalent in tendering his deed, to entitle him to the relief sought by him. The Court held after the death of complainant, that a delivery of the deed to the defendant under a decree of the Court, and acceptance by him, would pass the title to him.

The only remaining case cited by defendant's counsel, that of *Inlow &c.* v. *Commonwealth,* 6 Monroe, 74, grew out of two voluntary deeds made by a father, the one giving and conveying most of his property to his two sons, and the other (subsequently executed,) conveying all of his property to one of said sons. The controversy was as to the ownership of certain slaves, all being claimed in behalf of one of the sons and a moiety in behalf of the other, and Inlow, one of the parties being the guardian of both. The question was as to the validity of the first deed, which was held good, but the whole case is so inapposite to that at bar, that I deem a critical examination of it as being here uncalled for. Such examination would result in showing it depends not upon the questions involved in the case at bar, but upon the doctrine peculiar to voluntary settlements, that if they are fairly made are always binding in Equity upon the grantor, unless it appear clearly that he never parted nor intended to part with the possession of the deed; and unless other circumstances besides his retaining its possession show that it was not intended to be absolute. The cases settling that doctrine, not already examined, need only be referred to without a critical examination; they are *Barlow* v. *Hencage,* Pre. Cha.211; *Clavering* v. *Clavering,* Ib. 235; *Lady Hudson's* case, 1 Bro. Parl. Cas. 122, cited by Lord Keeper Wright, in *Clavering* v. *Claver-*

*ing*; *Johnson* v. *Smith*, 1 Ver. 314; *Boughton* v. *Boughton*, 1 Atk. 625; *Villers* v. *Beaumont*, 1 Vern. 100; *Bale* v. *Newton*, Ib. 464.

But there are other cases still demanding examination. *Belden* v. *Carter*, 4 Day, 66. The grantor having signed and acknowledged a deed delivered to a third person, with directions if he never called for it to deliver to the grantee, his daughter, after his death. It was done accordingly, and the grantee and her husband, being sued in ejectment by the plaintiffs as heirs of the grantor, successfully defended their possession by means of the deed. *Hatch* v. *Hatch*, 9 Mass. 207, and *Ruggles* v. *Lawson*, 13 Johns. 285, present facts entirely similar, and also the same results. In both cases the question involved was as to the validity of deeds executed by the father of the grantees respectively, and delivered to third persons, to be kept until the grantor's death in each case, and then to be delivered to grantees, (in the latter case if the grantor should die without making a will.) The deeds were in both cases delivered to the grantees in pursuance of directions and accepted by them. Their titles were in both cases controverted, in proceedings to which they were respectively parties.

In *Wheelwright* v. *Wheelwright*, 2 Mass. 447, the facts of the case were similar to those of the last two cases cited. The grantees, however, were minors when the deed was executed, and delivered to a third person, for delivery to the grantees upon the grantor's death. In a proceeding for partition, between the grantee after his acceptance of the deed and the devisees of the grantor, it was decided that the deed, whether delivered to the third person as a trustee for the use of the grantees, or as an escrow, was valid.

In *Hedge* v. *Drew*, 12 Pick. 141, delivery of a deed to the register of deeds by the grantor for the use of the grantee to be recorded, and the grantee's subsequent assent to the same, was held equivalent to an actual delivery to the grantee.

In *Ward* v. *Lewis*, 4 Pick. 51, possession of two parts of a deed of trust, made for the benefit of creditors, the one

by one of the trustees, the other by the creditors was con-
sidered a strong circumstance to show acceptance of the
deed by the trustees and the creditors.

*Powers* v. *Russell,* 13 Pick. 77. *Per-Curiam:* "Had it
appeared when the deed was sent to the registry that it was
done for the grantee's use; if it had been said that he might
call and take it, and he had called for it and taken it accor-
dingly, this might have made the delivery to the register of
deeds for the use of the grantees a good delivery.

*Buffum* v. *Green,* 5 New Hamp. 71. A delivery of a
deed to a third person for the use of a grantee is sufficient if
he afterwards assent, and the thing granted shall be said to
vest in him from the time of such delivery.

*Ward* v. *Ross,* 1 Stew. 136. When a deed on its face pur-
ports to have been delivered and is in the hands of the party
claiming under it, proof of the signing and sealing is *prima
facie* evidence of the delivery.

*Canning* v. *Pinkham,* 1 New Hamp. 357. "Possession of
the deed by the grantee is presumptive evidence of a deliv-
ery by the grantor." "All that it. is incumbent on the
grantee," (where delivery has been to a stranger,) "in order
to perfect the delivery, is that he accept or assent to what
has been done by the grantor before the latter revokes his
intention to convey." And holding the deed in that case
valid, they advert to the circumstance as influencing them
in their conclusion that this delivery too, was afterwards rati-
fied by the grantees; as they received the deed from those
with whom it was deposited, placed it upon record, and have
since conveyed the land, &c."

In *Clark* v. *Ray,* 1 Har. and Johns. 323, possession of a
deed by the grantee was held to be evidence of its delivery
to, and acceptance by him.

*Hughes* v. *Easten,* 4 J. J. Marsh, 572, adjudges that sim-
ply proving that a deed was signed, attested and left on the
table in the absence of the donor, could not show a delivery,
but if it were afterwards in possession of the party entitled
to the benefit of it, that might be *prima facie* evidence of a
delivery.

The cases remaining for examination are those, in which deeds have been held inoperative for want of acceptance by grantee. *Fay* v. *Richardson*, 7 Pick. 91. A bond was signed and sealed, but ~~but~~ not delivered to the obligee. It, however, was afterwards delivered to the obligee, by a person having no authority to do so. *Held*, that the obligee could not maintain any action on the instrument.

*Jackson* v. *Leek*, 12 Wend, 107. It was adjudged in this case, that a deed of land takes effect only from its delivery; and that although signed, sealed and acknowledged, yet if not actually delivered by the grantor during his life, no title passes by it. And so say this Court in *Herbert* v. *Herbert*, Bre. 282. There A. being largely indebted to B. executed a deed conveying a tract of land to him, the said B. and procured the recording of it, all in the absence, and without the knowledge of the grantee. The grantor afterwards died, and the deed was found among his papers. The grantee instituted this suit to recover possession of the land described in the deed. His effort was unsuccessful. The Court *held* that it was most manifest that there had been no delivery of the deed so as to pass the title; that any possession of the deed derived by the grantee after his grantor's death, could not amount to its acceptance by the grantee, there having been no delivery during the life time of the grantor. They say "it is essential to the legal operation of a deed, that the grantee assents to receive it, and that there can be no delivery without acceptance. Indeed a delivery of a deed, which is essential to its execution and operation, necessarily imports that there should be a recipient. Now in this case it would be idle to contend that there was a delivery and reception, when the grantor died before the grantee knew of the existence of the deed, and he could not therefore receive that, of the existence of which he had no knowledge, nor could there have been a delivery to him without such acceptance."

*Jackson* v. *Phipps*, 12 Johns. 418. A. being indebted to B., it was agreed between them, that the former should execute to the latter a deed of land to secure such indebted-

ness. The deed was some time afterwards executed by the debtor, and by his procurement recorded; neither the grantee nor any one in his behalf being present, or receiving the deed. The deed, after the grantee's death, came into the hands of the defendant, his son and heir, who relied upon it to defend his possession of the premises in this action which was brought to evict him. The deed was held void for want of grantee's assent to receive it.

In *Jackson* v. *Dunlap*, 1 Johns. Ca. 114, it was also held, "that it is essential to the legal operation of a deed that the grantee assents to receive it, and that there can be no delivery without an acceptance;" and in *Jackson* v. *Richards*, 6 Cowen, 620, that a deed duly executed and recorded, but never delivered to nor accepted by the grantee, is void.

In *Ferguson* v. *Miles*, 3 Gilm. 363, one D. B. Hill purchased the land in question, on the 8th August, 1843, on an execution in his favor, against one Morton, and on the 11th of November, 1844, the sheriff executed a deed therefor to the plaintiff, as assignee of the said Hill. On the 29th April, 1841, the land had been purchased by the said Morton at tax sale. On the 11th May, 1843, the sheriff executed a deed to said Morton in consummation of said tax sale, at the instance of the said Hill, and delivered it to him, without the surrender of the certificate of purchase, and afterwards received the certificate and made another deed to Morton. This Court held the first deed, that of the 11th May, "invalid for want of a delivery, as having been procured by Hill in his own wrong, and without the assent of Morton;" the evidence showing "that the deed was never accepted by Morton, nor any one authorized to act for him; and that a ratification of the delivery to Hill did not appear from the subsequent conduct of Morton."

In *Jackson* v. *Bodle*, 20 Johns. 188, the Court refuse to permit assignees in a deed of trust, after a lapse of twenty years, for the first time, to assent to the trust and take under a deed. They say "it is necessary to the validity of a deed, that there be a grantee willing to accept it. It is a con-

tract, a parting with the property by the grantor, and an acceptance thereof by the grantee," &c.

In *Maynard* v. *Maynard*, 10 Mass. 462, M. signed and sealed a deed conveying land to his son, and left it with the scrivener to get it recorded, which was done, and the deed at the grantor's request still retained in the scrivener's hands until the death of the son, when the father reclaimed and canceled it, the son having known nothing of the transaction. *Held*, that the father was still entitled to the land, as against the heirs of his son, the conveyance never having been perfected by a delivery of the deed.

*Lloyd's lessee* v. *Giddings*, 7 Ohio, 418, is very much like the case at bar, in this, that after the plaintiff had made out his title, the defendant undertook to show an outstanding title in a third person in order to defeat a recovery. For that purpose he offered to read in evidence a quitclaim deed from plaintiff's lessor, to one Simon Perkins. Plaintiff objected, but his objections were overruled and deed read, and then, as here, the controversy was as to the validity of the alleged outstanding title. To defeat it, the deposition of Perkins, the grantee named in it, was read, showing that he had received the deed to enable him to convey it to the defendant, Giddings, in consummation of a previous contract between said defendant and plaintiff's lessor, for the purchase of it, should he be found entitled to it, and for no other purpose. The jury found for defendant, and plaintiff moved the Supreme Court for a new trial. The Court, under these circumstances, hold the grantee named in the deed, not to be the owner of the land, but merely the owner's agent. They say, "the acceptance of a deed is absolutely necessary to vest the grantee with title under it. No man can be compelled to take a conveyance against his consent," &c. And again: "If it is possible to lay hold of any principle of law, or of any adjudged case of authority, to prevent this deed from operating to defeat the title of the plaintiff, that we ought to do so. And I believe enough has been said to authorize us to come to the conclusion, that the deed to Simon Perkins was not, under the circumstances, effectual to convey the

title to him, that it could not be used for the purpose of showing an outstanding title in a third person, and that accordingly there must be a new trial."

In *Elsey* v. *Metcalf*, 1 Denio, 326, the plaintiff claimed under a deed to himself from L. Whitcomb and wife, duly acknowledged and recorded. It was proved by a brother of the grantor that the aforesaid deed was sent to the witness, by the grantor, in a letter received by said witness at the Post Office; retained several days in his possession, and then deposited in the clerk's office by him for record. The letter was not produced, nor did it appear for what purpose the deed was sent to the witness. The deed was held void for want of delivery.

The other cases involving, to any extent, the question under consideration, will be found to settle no doctrine variant from that found in the many cases already examined. I will content myself with a simple reference to them. They are *Frisbie* v. *McCarty*, 1 Stew. & Porter. 56; *Carr* v. *Heixie*, 5 Mason, 60; *Alexander* v. *Bland*, Cook, 43; *Fairbanks* v. *Metcalf*, 8 Mass. 230; *Harrison* v. *Phillips' Academy*, 12 do. 456; *Jackson*, v. *Bard*, 4 Johns. 230; *Hood* v. *Brown*, 2 Ham. 268; *McCarty* v. *McConnel*, 1 Rep. Com. Ct. 190; *Jackson* v. *Schoonmaker*, 2 Johns. 230; *Halleck* v. *Bush*, 2 Root, 26.

This review of authorities exhibits the peculiar features distinguishing that class of cases in which the acceptance by the grantors of deeds, delivered to persons not authorised to receive them, has been presumed, from that in which such presumption has been denied, and varying their results. It demonstrates that between the case at bar and the former class of cases, there is no such verisimilitude of facts, as to justify its claims to be ranked with them; while its family resemblance to all the cases of the latter class, is so striking and exact as to require its recognition as one of their connections. And it shows that in every case belonging to the former class, it has appeared that the grantee has actually assented to, or accepted the deed, and that he, or some one claiming under him, has been a party to the proceeding,

questioning its validity, and on the other hand, that the history of every case destitute of those features or either of them, is found recorded among the annals of the latter, and more unfortunate class.

On this result I base the conclusion, that the true question in all such cases is, and always has been, not whether there has been an acceptance simply and without reference to time, but whether there has been an acceptance cotemporaneously with the delivery. As has been shown, a deed can only take effect at and from its delivery, if at all, and consequently delivery and acceptance must be mutual and concurrent acts. Hence, proof of an acceptance subsequent to the delivery is not sufficient to give validity to the deed, and therefore in such cases, judicial construction has sometimes been invoked to extend such subsequent acceptance, by relation back to the date of the delivery. But although the Courts in some cases speak of the beneficial character of the deed, as justifying the presumption of the grantee's acceptance of it, that is, nevertheless, but one of a series of circumstances concurring to form the basis of such presumption. The presumption that a party will accept, because he is to be benefited thereby, although deduced from the strongest passion of the human heart, is never carried so far as to consider him as having accepted. It is in itself in but an embryo state until it finds confirmation in an actual acceptance.

But admit this conclusion to be incorrect, and that where the grantor has parted with all control over a deed, upon its face apparently beneficial to the grantee; the grantee's acceptance of such deed will therefore be presumed, although the delivery was made to one not authorised to accept it, and and nothing shows any affirmative act on the part of the grantee, nor even any knowledge of the existence of the deed, still this presumption would never be entertained, in the absence of all proof of the existence of the grantee at the time of the delivery. Nor could any presumption be legally drawn from proof of that he was alive at some former period, to supply the defect of proof in that respect, although for other purposes, as to prosecute a suit in his name for instance, it might

Hulick *v.* Scovil.

be. Legal presumptions must have their foundations in facts. That no conclusion, however legitimately deducible from the premises, can possess the attributes of truth and certainty, if the premises themselves be assumed, is a principle of law as well as logic. A grantee is one of the necessary constituents of a deed; dispense with proof of it, and you may, by a parity of reasoning, presume also the existence of the remaining constituents, a grantor and a thing granted, and thus base title wholly on presumption.

In the case at bar, there was no proof that Wolcott was alive when the deed was delivered, and therefore his assent to an acceptance of it cannot be presumed. But admit that the proof that he was alive when the land was purchased, may justify the presumption, that he was so ten years afterwards when the deed was made, still he may have died since: or even if that assumption be untrue in fact, and he is yet alive, he certainly will die, and may do so, without an acceptance of the deed, or even any knowledge of its existence. The result in either case would be the same; a title resting at best on supposititious and very doubtful grounds, would be made available to defeat one sustained by the strongest muniments; a possession acquired without color or claim of title, would have thrown around it fortifications impregnable by any living assailant; and the solemn adjudication of the Court, if not founded on a false assumption of facts, would rest for affirmation or defeasance, upon the affirmative action of the grantee, if alive, either in accepting or rejecting the deed, or upon his dying without any action in the premises. No authority can be found in the annals of jurisprudence for doctrine so replete with injustice. This Court will not be the first to furnish it.

The judgment of the Circuit Court of Peoria county is reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

PURPLE, J. said:

I dissent from the Opinion of the Court in this case, upon one point arising in the cause. I understand the law to be,

that when a deed has once been delivered to the grantee, or to a stranger, and the grantor has relinquished all control over it, on account of the beneficial nature of the grant, it will be presumed to have been delivered for the benefit of the grantee, and that he will accept it, unless it appears affirmatively that he has refused to do so.

KOERNER, J. also dissenting:

It is very well settled that where a grantee is ignorant of the grant to him, and does not assent at the time, when the deed is delivered to a stranger, he will be presumed to have assented at the time, when the delivery took place, if he shows by subsequent acts, his willingness to take under the deed. It seems to me that his assent might be also inferred from acts previous to the delivery. In the present case, the grantee had purchased the land included in the Auditor's deed, had paid the purchase money down, and taken a certificate of purchase by which he was entitled and promised to receive a deed in due time. By these acts he sufficiently manifested, that he would, at a subsequent time, accept of the deed. There is no evidence that he changed his mind.

But independent of the peculiar facts of this case, I am inclined to the opinion, that when the grantor delivers a deed beneficial to the grantee, so as to deprive himself of all control over it, the acceptance of the grantee will be presumed, although the deed is delivered to a stranger. I cannot fully concur with the views expressed in the Opinion of the majority of the Court, and therefore dissent from the decision.

*Judgment reversed.*